IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LAFAITHEA ALLEN o/b/o R.H.                                              PLAINTIFF

VS.                               CIVIL ACTION NO. 3:14cv893-FKB

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY                                                     DEFENDANT

## OPINION AND ORDER

### I. Introduction and Procedural History

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration. The Commissioner denied the Title XVI application of Lafaithea Allen on behalf of her son, R.H. a preschooler. Presently before the Court is Plaintiff's motion for summary judgment [9] and the Commissioner's motion to affirm [11]. Having considered the motions and briefs, the Court concludes that this matter should be remanded to the Commissioner for further proceedings.

Plaintiff, Lafaithea Allen, mother of the claimant, R.H., filed for SSI disability benefits on behalf of R.H. on April 13, 2011, alleging an onset date of December 7, 2008, and disability due to asthma and inability to talk. The application was denied by the Social Security Administration both initially and on reconsideration, after which Plaintiff requested a hearing before an administration law judge (ALJ). Following initial and supplemental hearings, the ALJ issued a decision on August 29, 2013, finding that R.H. was not disabled. Plaintiff sought review by the Appeals Council, which declined review. Plaintiff then brought this appeal.

II. <u>Evidence</u>

R.H. was born on October 7, 2008, and was approximately four years and ten months of age at the time of the ALJ's decision.  His medical records reveal a history of respiratory problems and upper respiratory infections, including hospitalizations for acute episodes in 2008, 2010, and 2013.  In 2011, he was diagnosed with chronic asthma, and since that time has been treated with Zyrtec, Nasonex, albuterol, Singulair, and Augmentin.  Notes from an evaluation by a pediatric allergist in 2012 describe his asthma as mild and persistent.  R. 392, [8] at 396.

The records also reveal speech delay and problems with articulation.  A speech/language assessment performed in 2011 revealed a moderate articulation disorder.  R. 335, [8] at 339.  A hearing test performed in August of 2012 indicated a mild degree of bilateral hearing loss.  R. 383, [8] at 387.

In August of 2012, Dr. William Sorey evaluated R.H. and diagnosed developmental delay, speech delay, and suspected autism disorder.  R. 387, [8] at 391.  Dr. Sorey referred him to Dorothy Scattone, Ph.D., who performed a psychological evaluation on October 8, 2012.  During the examination, R.H. demonstrated inconsistent eye contact, did not interact with adults very much, and was resistant to being held.  R. 380, [8] at 384.  He repeated what was said to him and was observed to hit a jar to his head for no apparent reason.  *Id.*  An attempt to administer the Leitner International Performance Scale-Revised was unsuccessful, so Dr. Scattone instead administered the Cattell Infant Intelligence Scale.  On the Cattell, R.H. achieved an IQ of 43 with a mental age of 21 months, indicating that he was functioning in the moderately delayed range.  *Id.*  On the

Vineland Adaptive Behavior Scales, Second Edition (VABS-II), he achieved a composite score of 56, indicating that his adaptive behavior is in the low range.  R. 381, [8] at 385.  Individual domain scores were as follows: Communication - 44; Daily living - 64; Socialization  - 55, and Motor - 72.[1]  R. 381, [8] at 385.  A test for symptoms of autism, the CARS2-ST, indicated mild symptoms of autism spectrum disorder.  *Id.*  Dr. Scattone's impressions were as follows: cognitive skills within the moderately delayed range; adaptive behavior in the low range; mild to moderate developmental delay, and symptoms of autism.  *Id.*

In May of 2013, R.H. was evaluated at Weems Community Mental Health Center (Weems).  During the interview, Plaintiff reported that R.H. was easily annoyed and frustrated, rocked himself for long periods of time, hit and fought, lacked appropriate socialization skills, engaged in limited eye contact, suffered from sleep disturbance, and would try to choke himself when he did not get his way.  R. 447-48, [8] at 451-52.  Mental status exam revealed abnormal body movements of the head and trunk, rambling speech, and below average intelligence.  R. 449, [8] at 453.  Diagnoses were as follows: Axis I - pervasive developmental disorder, communication disorder NOS, and learning disorder, NOS; Axis II - mental retardation, severity unspecified; Axis III - asthma; Axis IV, speech impediment; Axis V - a Global Assessment of Functioning (GAF) of 40.[2]  *Id.*

---

[1]As explained in the report, the mean composite and domain scores of the VABS-II are 100; each has a standard deviation of 15, with average scores (68%) falling between 85 and 115.  R. 380-81, [8] at 384-85.

[2]The Global Assessment of Functioning (GAF) is a standard measurement of an individual's overall level of functioning on a scale of 1-100, with 100 representing "superior functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders

At the hearing, Plaintiff testified primarily concerning R.H.'s behavior and abilities. She stated that he does not play well with other children but instead fights with them. R. 89, [8] at 93. He also tries to fight with her and has tried to fight with his four-month-old sibling. *Id.* R.H. will listen to a story for awhile but will then run off. R. 91, [8] at 95. He points to things that he wants rather than using words to ask for them. R. 92, [8] at 96. He will hug his mother at times. R. 93, [8] at 97. He does not know his colors. R. 90, [8] at 94. Plaintiff stated that she can understand less than fifty percent of what R.H. says. R. 93, [8] at 97.

A supplemental hearing was held at which Dr. Oscar Farmati, an allergist, testified that R.H.'s respiratory condition does not meet or equal in severity the listing for bronchial asthma or any other listed impairment. R. 104-5, [8] at 108-9.

Additional evidence in the record includes opinions given by the state agency consultants during the initial consideration and reconsideration of Plaintiff's claim. Dr. Karen Hulett, who on August 11, 2011, completed the evaluation form for the initial consideration, and Dr. Eva Henderson, who completed reconsideration evaluation forms in September of 2011, indicated that R.H. did not suffer from any severe impairment. R. 324, [8] at 328; R. 350, [8] at 354. In connection with the September 2011 denial of reconsideration, Cindy Beckham opined that R.H. suffered from an articulation disorder

---

34 (4th ed. text rev. 2000) (DSM-IV-TR). The GAF is the Axis V segment of the DSM's multiaxial system for assessment. A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.*, depressed man avoid friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.*

but that this impairment did not meet, equal, or functionally equal a listed impairment. R. 344, [8] at 348.

### III. ANALYSIS

Disability claims by children are determined using a three-step sequential analysis. *See* 20 CFR. § 416.924. At step one, the ALJ determines whether or not the claimant is engaged in substantial gainful activity. 20 CFR. § 416.924(b). If not, the ALJ moves on to step two, which is a determination as to whether the child suffers from a severe impairment or a combination of impairments that is severe. 20 CFR. § 416.924(c). A "severe" impairment is one which causes more than minimal functional limitations. *Id.* If the ALJ determines that the child suffers from a severe impairment, or a combination of impairments that is severe, the analysis continues to step three, which involves a determination as to whether the child's impairment meets, medically equals, or is the functional equivalent of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments). 20 CFR § 416.924(d). If the ALJ determines that the claimant's impairment is not a listed impairment and is not medically equal to a listed impairment, the ALJ must make an assessment of whether the impairment is functionally equivalent to a listed impairment.

Functional equivalency is determined by assessment of all the functional limitations caused by the child's impairment or combination of impairments. 20 C.F.R. § 416.926a. This assessment requires the ALJ to analyze the child's ability in six "domains," which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six functional equivalency domains are (1) acquiring and

using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* A finding of functional equivalence is made only if the child has "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is one which seriously interferes with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). It is "more than moderate but less than extreme." *Id.* An "extreme" limitation is a limitation which interferes very seriously with these abilities. 20 C.F.R. § 416.926a(e)(3). When deciding whether a child has a marked or extreme limitation, the ALJ must consider the child's functional limitations in all areas, including their interactive and cumulative effects. 20 C.F.R. § 416.926a(c).

In his decision, the ALJ found that R.H. has the severe impairments of articulation disorder, asthma, and mild hearing loss. R. 14, [8] at 18. He determined that these impairments do not meet or medically equal the requirements for a listed impairment. *Id.* The ALJ continued on in the sequential process to assess whether R.H.'s impairments are functionally equivalent to listed impairments by analyzing R.H.'s ability to function in each of the six domains. The ALJ found that R.H. had no limitations in domains two (attending to and completing tasks), four (moving about and manipulating objects), and six (health and physical well-being); and less than marked limitations in domains one (acquiring and using information), three (interacting and relating with others), and five (caring for self). R. 17-22, [8] at 21-26. Because the ALJ did not find R.H.'s limitations to be marked in two domains or extreme in one domain, the ALJ concluded that R.H. is not disabled within the

6

meaning of the Social Security Act. R. 23, [8] at 27.

In explaining his decision, the ALJ referenced the evidence of record regarding R.H.'s history of asthma, his minor acute illnesses, his articulation disorder, and his mild hearing loss. R. 16, [8] at 20. He noted that Dr. Scattone had found him to be functioning in the moderately delayed range. R. 18, [8] at 22. The ALJ stated that he gave "great weight" to the opinions of Dr. Farmati and of Cindy Beckham and "less weight" to the opinion of Dr. Karen Hulett. R. 17, [8] at 21.

In reviewing the Commissioner's decision, this Court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

Plaintiff argues that the ALJ failed to evaluate all of the medically-determinable impairments. The undersigned agrees. Nowhere in his opinion does the ALJ refer to the evidence that R.H. suffers from autism, a learning disability, deficits in adaptive

7

functioning, and low IQ. Neither does he ever explain what weight, if any, he gave to this evidence. Indeed, with the exception of one brief reference to developmental delay, R. 18, [8] at 22, the ALJ's opinion reads as if he were unaware of the evaluations by Dr. Scattone and mental health professionals at Weems. This failure is especially notable in the ALJ's discussion of domain three: In determining R.H.'s limitations in the domain of interacting and relating to others, the ALJ references only those limitations arising from R.H.'s articulation disorder; he never acknowledges R.H.'s behavioral problems, fighting, failure to follow instructions, and his lack of socialization skills.

"[T]he ALJ must consider *all* the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citations omitted) (emphasis added). It may be that the ALJ's ultimate decision as to disability in this case was correct. But the ALJ has failed to explain his analysis in such a way as to allow meaningful review by this court. *See Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007) (remanding where ALJ failed to explain decision sufficiently to allow judicial review).

## IV. Conclusion

Accordingly, Plaintiff's motion is granted, the Commissioner's motion is denied, and this matter is remanded to the Commissioner. Upon remand, the ALJ should discuss all the evidence of record and give his reasoning for his conclusions as to all of R.H.'s

impairments, both individually and in combination.  The ALJ should also obtain an updated expert opinion as to the nature and severity of R.H.'s mental impairments.

A separate judgment will be entered.

So ordered and adjudged, this the 3rd day of February, 2016.

/s/ F. Keith Ball<br>UNITED STATES MAGISTRATE JUDGE